**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PLANET AID,
a Massachusetts nonprofit corporation,

      Plaintiff,

                                      Hon. Janet T. Neff
v.                                   Case No.1:14-cv-00149-JTN

CITY OF ST. JOHNS,
a Michigan municipal corporation,

      Defendant.

---

**Dalton & Tomich, plc**
Daniel P. Dalton (P 44056)
Attorney for Plaintiff
719 Griswold Street, Suite 270
Detroit, Michigan 48226
313.859.6000
313.859.8888 (fax)
ddalton@daltontomich.com

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER, OR IN THE ALTERNATIVE
REQUEST FOR PRELIMINARY INJUNCTION**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

CONTROLLING AUTHORITY .............................................................................................v

QUESTIONS PRESENTED.................................................................................................. vi

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS ......................................................................................................1

STANDARD OF REVIEW .....................................................................................................7

LEGAL ARGUMENT.............................................................................................................8

    I.    Plaintiff has a Strong Likelihood of Success on the Merits..............................................8

        A.  The City has Violated Plaintiff's Free Speech Rights ............................................8

        B.  The City has Violated Plaintiff's Equal Protection Rights ...................................11

        C.  The City has Violated Plaintiff's Due Process Rights ..........................................11

            i.    Procedural Due Process Violation ................................................................14

                1.  Plaintiff has Valid Property and Liberty Interests .............................14

                2.  The City Deprived Planet Aid of its Property and Liberty Interests..16

                3.  Planet Aid was not Afforded Adequate Process ...............................17

            4.  Substantive Due Process Violation ...............................................................18

        D.  The City's Ordinance Violates the Dormant Commerce Clause………………...19

    II.    Plaintiff has no Adequate Remedy at Law and will Suffer Irreparable Harm if Injunctive Relief is Not Granted………………………………………………………………….……..22

    III.  The Balance of Hardships Weighs in Plaintiff's Favor and an Injunction Serves the Public Interest………………………………………………………………………………..23

CONCLUSION......................................................................................................................25

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                              <u>**Page**</u>

*Abney v. Amgen, Inc.,* 443 F.3d 540 (6th Cir. 2006)…………………...………………...…..23

*Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263 (1984)…………………………………………...20, 21

*Belvidere Twp. v Heinze*, 615 N.W.2d 250 (Mich. App. 2000) .................................................... 15

*Braun v. Ann Arbor Charter Twp.,* 519 F.3d 564 (6th Cir. 2008) ............................................... 17

*Carey v. Brown*, 447 U.S. 455 (1980)…………………………………………………11, 12

*Connection Distrib. Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998).........................................................7-8

*Countrywalk Condominiums, Inc. v. City of Orchard Lake Vill.*, 221 Mich. App. 19; 561 N.W.2d 405 (1997)............................................................................................................. v, 12

*Crego v. Coleman*, 463 Mich. 248; 615 N.W.2d 218 (2000) ....................................................... 11

*Crook v. Baker,* 584 F. Supp. 1531 (E.D. Mich. 1984) ............................................................. 18- 19

*CSX Transp., Inc. v. Tenn. State Bd. of Equalization*, 964 F.2d 548 (6th Cir. 1992)……...7, 20, 22

*Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474 (6th Cir. 1995)............... 24

*Elrod v. Burns,* 427 U.S. 347 (1976) ..................................................................... v, 7, 8, 23

*English v. Augusta Twp.*, 204 Mich. App. 33; 514 N.W.2d 172 (1994)..................................... 11

*G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994)........... 24

*Harris v. City of Akron,* 20 F.3d 1396 (6th Cir. 1994) ....................................................... 17

*Horn v. City of Mackinac Island*, 938 F. Supp. 2d 712 (W.D. Mich. 2013) ...............................19

*Howard v. Grinage*, 82 F.3d 1343 (6th Cir. 1996) .......................................................................18

*In re Eagle-Picher Indus., Inc.*, 963 F.2d 855 (6th Cir. 1992)……………………………………7

*Kropf v Sterling Hts.*, 391 Mich. 139; 215 N.W.2d 179 (1974) ........................................11-12

*Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.*, 172 F.3d 397 (6th Cir. 1999)……………………………………………………………12

*Leary* v. *Daeschner*, 228 F.3d 729 (6th Cir. 2000)........................................................ 7

*McNeilly v. Terri Lynn Land*, 684 F.3d 611 (6th Cir. 2012)....................................................... v, 7

*Merrill Lynch, Pierce, Fenner & Smith v. Grall*, 836 F. Supp. 428 (W.D. Mich. 1993)………....................................................................................................7

*Miller v. Blackwell*, 388 F.3d 546 (6th Cir. 2004)........................................................................ 7

*Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202 (5th Cir. 2011)……………….9, 10

*Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566 (6th Cir. 2002)………….......23

*Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir. 2005)……………………………...18

*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970)………………………………………21, 22

*Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390 (6th Cir. 1987) ........................................................................................................................ 23

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992)…………………………………………….12-14

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781 (1988)………………………..9

*S.C. State Highway Dept. v. Barnwell Bros.*, 303 U.S. 177 (1938) …………………………..…..20

*S. Pac. Co. v. State of Arizona ex rel. Sullivan*, 325 U.S. 761 (1945) ...................................20, 21

*Sanderson v. Vill. of Greenhills*, 726 F.2d 284 (6th Cir. 1984)..................................................... 16

*Schaumburg v. Citizens for Better Env't*, 444 U.S. 620 (1980)..........................................8-10, 24

*Sec'y of State of Maryland v. Munson Co., Inc.,* 467 U.S. 947 (1983)……………………..…….9

*Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031 (6th Cir. 1992) .........................15

*Thomas v. Cohen*, 304 F.3d 563 (6th Cir. 2002) .........................................................................15

*Thomas v. Collins*, 323 U.S. 516 (1945).................................................................... 9, 10
*TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty, Ohio,* 430 F.3d 783. (6th Cir. 2005)…...…...11
*United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330 (2007)………………………………………………………………………………….20
*Waeschle v. Dragovic*, 576 F.3d 539 (6th Cir. 2009) ..................................................15
*Winter v. NRDC*, 555 U.S. 7 (2008) ...............................................................…....…….23

**Statutes**

U.S. CONST. art. I, § 8, cl. 3.......................................................................................20
U.S. CONST. amend. I.................................................................................................8
U.S. Const. amend. XIV.............................................................................................11
Const. 1963, Art. I, section 5.......................................................................................8
Const. 1963, Art. I, section 2......................................................................................11

**Other Sources**

Erwin Chemerinsky, Constitutional Law: Principles & Policies § 5.3.1, at 419 (3d ed. 2006)…20

## CONTROLLING AUTHORITY

Plaintiff relies upon *McNeilly v. Terri Lynn Land*, 684 F.3d 611, 615 (6th Cir. 2012) (outlining the four-factor test a district court is to apply in order to determine whether a preliminary injunction should issue); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (holding that "[a] loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury."); *Waeschle v. Dragovic*, 576 F.3d 539 (6th Cir. 2009) (outlining the requirements for a procedural due process claim); *Pearson v. City of Grand Blanc*, 961 f.2d 1211, 1217 (6th Cir. 2005) (holding that under substantive due process individuals have a constitutional "right not to be subject to arbitrary or capricious action by a state either by legislative or administrative action…."); and *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) (holding that a state or local regulation that "regulates evenhandedly  to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.").

## QUESTIONS PRESENTED

1.  Whether this Court should issue a temporary restraining order or preliminary injunction in the form proposed by Plaintiff?

    *Plaintiff's answer: Yes*

2.  Whether Plaintiff has a likelihood of success on the merits of its claims?

    *Plaintiff's answer: Yes*

3.  Whether Plaintiff will suffer irreparable harm if a preliminary injunction does not issue?

    *Plaintiff's answer: Yes*

4.  Whether Defendant can demonstrate any harm to them or others if a preliminary injunction issues?

    *Plaintiff's answer: No*

5.  Whether the preliminary injunction will be serve the public's best interest?

    *Plaintiff's answer: Yes*

## INTRODUCTION

Defendant City of St. Johns, Michigan ("Defendant" or "City") has created a scenario that bans all donation collection bins within its jurisdiction, then enacted an ordinance affirming the ban giving stand-alone donation and thrift stores, in this case Goodwill, the sole ability to obtain clothing and shoe donations in the City. This action violates the Equal Protection Clause of the United States Constitution as well as the First Amendment Free Speech clause, the Procedural and Substantive Due Process Clauses, and the Dormant Commerce Clause. Planet Aid sought an amicable resolution with the City and attempted to provide the City with an ordinance that would permit donation bins but give the municipality the ability to regulate the bins. The City refused. With no other option available, this lawsuit was filed.

With this motion, Plaintiff Planet Aid seeks an Order granting it a temporary restraining order ("TRO") or, in the alternative, granting its request for a preliminary injunction pursuant to Rules 65(a) and 65(b) of the Federal Rules of Civil Procedure to allow it to place bins on private property in St. Johns without governmental interference. Without the issuance of a TRO or preliminary injunction preventing it from enforcing Ordinance #618 (the "Ordinance"), the City, acting under color of state law, will continue to deprive Planet Aid of its rights guaranteed by the First and Fourteenth Amendments to the United States Constitutions, its parallel rights under the Michigan Constitution, and its rights under the Dormant Commerce Clause.

Since the injuries inflicted by enforcing the Ordinance are actual, imminent and ongoing to Plaintiff and all donation bin operators, Plaintiff respectfully requests immediate consideration of the instant Motion by this Court.

## STATEMENT OF FACTS

*Planet Aid and its Charitable Efforts*

1

Founded in 1997, Planet Aid is a Massachusetts nonprofit corporation whose mission is to "work to strengthen and organize communities, reduce poverty and promote small enterprise development, support sustainable local food production, improve access to training and quality education, and increase health awareness and encourage healthy lifestyles." *Exhibit 1*, Planet Aid Mission Statement. In order to effectuate its charitable mission, Planet Aid operates and maintains donation collection bins ("donation bins" or "bins") at which individuals can donated their used clothing, shoes and textiles. *Exhibit 2*, Planet Aid Declaration ¶ 2. Planet Aid then distributes the items collected in their donation bins to organizations in other countries. *Id.* ¶ 3. Since Planet Aid is a nonprofit organization, all proceeds it earns from reselling the donated items it collects are used to cover overhead expenses, and the remainder of the proceeds is donated to charity in order to improve health, aid vulnerable children, and reduce poverty in numerous communities. *Id.* ¶ 4.

Planet Aid's donation bins are placed on private business properties in order to be easily visible and accessible by individuals looking to deposit donations in the bins. *Id*. ¶ 5. Permission is requested from a property owner or business manager before placing one of its clearly marked and properly maintained donation bin on the owner's property. *Id.* ¶ 6. Planet Aid representatives generally visit each of its donation bins on a weekly basis in order to collect the donated goods and to avoid bin overflow and goods accumulating outside the bins. *Id.* ¶ 7. However, if donations begin to accumulate outside of the bins before Planet Aid officials make their weekly visit to the bins, anyone can contact Planet Aid to inform them of the overflow using the clearly provided current contact information on Planet Aid's bins. *Id.* ¶ 8.

Planet Aid began to place donation bins in the City of St. Johns on or about December 13, 2012. They were located at a at 1001 S. BR US Highway 27, St. Johns, MI 48879 and 701 West State Street, St. Johns, MI 48879. *Id.* ¶ 9.

### *The City Demands Planet Aid Remove its Donation Bins*

Soon after, on January 14, 2013, Community Development Director Dave Kudwa sent a letter to Planet Aid representatives informing them that their donation bins were "found to create a nuisance as people leave boxes and other refuse around the container." *Exhibit 3*, 1/14/13 Letter; *Ex. 2* ¶ 10. The letter cited absolutely no evidence, no authority in the St. Johns Zoning Ordinance ("SJZO") or elsewhere, to support its assertion that donation bins are a nuisance. *See Ex. 3*. The letter also failed to provide any specific examples or instances in which individuals left "boxes and other refuse" outside of Planet Aid's containers in the City. *Id.* Mr. Kudwa provided Planet Aid until January 23, 2013, to remove the donation bins, or the City would remove them and store them at the Department of Public Works. *Id.*

After reviewing the letter, Planet Aid requested its legal counsel contact City Attorney John Salemi in an effort to resolve the matter. *Ex. 2* ¶ 11. In an email sent to Mr. Salemi, Planet Aid's attorney asked whether Planet Aid would consider an ordinance similar to others in Michigan where donation bins were permitted but regulated by the City and if it could continue operating the two bins it had already placed in the City until the Planning Commission and City Commission had an opportunity to address an ordinance. *Exhibit 4*, 1/14/13 Email.

On January 18, 2013, Mr. Salemi responded to Planet Aid's inquiry and stated that, according to the City Manager, donation bins were "both a public nuisance and a violation of our zoning ordinance re accessory uses." *Exhibit 5*, 1/18/13 Email. He then reiterated the City's demand that Planet Aid remove all of its donation bins from the City. *Id.* Planet Aid's counsel

responded and asked whether the City had a procedure by which Planet Aid could challenge the City Manager's interpretation of the SJZO. *Id.* In response, Mr. Salemi simply stated that "[y]ou don't have standing to appeal even if there were. Boxes aren't on your property." *Id.*

On or about January 31, 2013, City officials removed Planet Aid's bins from their locations in the City and took them to be stored at the City's Department of Public Works facility. *Ex. 2*, ¶ 12. On February 4, 2013, Planet Aid officials picked up the confiscated bins from the Department of Public Works. *Id.* ¶ 13.

### *The City Proposes an Ordinance Prohibiting All Donation Bins in the City*

At the time the City demanded Planet Aid remove its donation bins, the City did not have any ordinances that supported its apparent contention that all donation bins needed to be accessory to a principal use, were permitted or not permitted or were deemed to be a nuisance in all instances. The earliest record of the City Commission discussing the proposed Ordinance was at its December 9, 2013 meeting. As the City Commission explained at the meeting, the Planning Commission had recommended "a total prohibition" on donation bins within the City. *Exhibit 5*, 12/9/13 City Comm'n Minutes, p. 7. The City Commission also discussed how other cities who recently implemented similar prohibitions on donation bins were being sued for their actions. *Id*.

At the same meeting, Mr. Salemi justified the City's proposed Ordinance on the fact that certain unnamed "for-profit companies" were placing donation bins across the City "without getting permission." *Ex. 5* at 7. Mr. Salemi further noted that the proposed Ordinance included a clause that was intended to "grandfather" in certain existing donation bins, as Mr. Salemi plainly stated that "we weren't sure if the Lions Club Recycling Center qualified." *Id.* Mayor Dana Beaman also justified the Ordinance on the fact that "*other communities* had people dropping off their trash" at donation bins. *Id*. (emphasis added). However, in response to the Mayor's

statement, Supervisor Steve Rademacher clarified that these trash drop offs had happened "very seldom" in the City, though there apparently had been "a few instances." *Id.*

After this discussion, the City Commission voted unanimously to introduce the proposed Ordinance at its January 13, 2014 meeting. *Id*. However, at the January 13, 2014 meeting, Director Kudwa indicated there was going to be public hearing about the proposed Ordinance on January 27, 2014. *Exhibit 7*, 1/13/14 Meeting Minutes.

### The City Commission Adopts the Proposed Ordinance

At its January 27, 2014 meeting, the City Commission voted unanimously[1] to adopt the Ordinance. *Exhibit 8*, Ordinance #618. The Ordinance was then signed into law by Mayor Beaman and City Clerk Mindy Seavey. *Id*.

The Ordinance amends Title VX, Chapter 155 of the SJZO and implements a complete prohibition on donation bins in the City. The Ordinance provides, in relevant part, that "[n]o person, business or other entity shall place, use or allow the installation of a donation box within the City of St. Johns." *Id*. § 1(c). The Ordinance further provides that the purpose of adopting the Ordinance is to "prevent[] blight, protect[] property values and neighborhood integrity, avoid[] the creation and maintenance of nuisances and ensure[e] the safe and sanitary maintenance of properties." *Id*. § 1(b). The Ordinance also claims that it also serves "to preserve the aesthetics and character of the community," and that unattended donation bins "*may* become an attractive nuisance for minors and/or criminal activity…." *Id*. (emphasis added). Furthermore, as City Attorney Salemi discussed at the December 9, 2013 City Commission meeting, the Ordinance includes a clause that exempts existing donation bins from being subject to the City's otherwise complete prohibition on donation bins. *Id*. § 1(d).

---

[1] The vote was 4-0 since Commissioner Nobach was absent from the meeting.

*The Ordinance's Differential Treatment of Planet Aid*

Under the language of the Ordinance, *any* organization – whether for-profit or non-profit – that operates donation bins are completely prohibited from doing so within the City. *Ex. 8* § 1(c) ("No person, business or other entity shall place, use or allow the installation of a donation box within the City of St. Johns."). By contrast, thrift shops that take in donations and re-sell them, such as Goodwill who has a store in St. Johns, are unaffected by the Ordinance and are able to continue soliciting and accepting charitable donations without City interference.

Further, the City's actions demonstrate that they strategically drafted the exemption to the Ordinance to apply to those organizations they desired to continue operating in the City. While the exemption on its face appears to be neutral in that it applies to any donation bin that was in existence on the Ordinance's effective date, *see Ex. 8* § 1(d), City Attorney Salemi indicated at the December 9, 2013 City Commission meeting that the exemption clause was specifically drafted to grandfather in certain donation bins the City apparently approves of. *Ex. 6* at 7 ("We did put in a grandfather clause because we weren't sure if the Lions Club Recycling Center qualified."). Unlike the Lions Club, Planet Aid does not fit within the exemption as the City forcibly confiscated all of Planet Aid's bins in the City approximately one (1) year before it adopted the Ordinance. *See Ex. 2*, ¶ 12. The City then refused to allow Planet Aid to operate its bins until the City Commission made a final decision on the matter. *See Ex. 5*. While the Ordinance's exemption clause appears neutral on its face, the City carefully crafted the clause to permit organizations it deemed acceptable (e.g., the Lions Club) to continue operating donation bins, while Planet Aid, who had no donation bins in the City on the Ordinance's effective date because the City forcibly removed them, remains prohibited from operating bins in the City.

To date, the City has offered no explanation for the Ordinance's differential treatment. So long as it enforces the Ordinance, the City is improperly infringing on Planet Aid's constitutional rights and the constitutional rights of all donation bin operators who are prohibited from exercising their constitutional rights within the City. Further, there is no adequate remedy at law to remedy the injuries to which Planet Aid and all donation bin operators are currently subjected.

## STANDARD OF REVIEW

The decision of whether to issue a temporary restraining order or preliminary injunction rests in the Court's sound judicial discretion. *CSX Transp., Inc. v. Tenn. State Bd. of Equalization*, 964 F.2d 548, 552 (6th Cir. 1992). When determining whether to issue a preliminary injunction, a district court consider four factors: (1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a temporary restraining order or preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the TRO or preliminary injunction. *McNeilly v. Terri Lynn Land*, 684 F.3d 611, 615 (6th Cir. 2012); *Leary* v. *Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000); *Miller v. Blackwell*, 388 F.3d 546 (6th Cir. 2004). These four factors are also used to determine a motion for a temporary restraining order. *Merrill Lynch, Pierce, Fenner & Smith v. Grall*, 836 F. Supp. 428, 431-32 (W.D. Mich. 1993). This standard is not a rigid test; in other words, the four factors should be balanced against each other rather than considered prerequisites that must be satisfied. *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992).

A finding of irreparable injury is mandatory if the Court finds a constitutional right is being threatened or impaired. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("A loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable

injury."). Thus, when a party seeks a preliminary injunction based on a potential First Amendment violation, "the likelihood of success on the merits often will be the determinative factor." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

## LEGAL ARGUMENT

### I.  Plaintiff has a Strong Likelihood of Success on the Merits

For the reasons explained below, Plaintiff has a strong likelihood of success on the merits of its free speech, equal protection, and due process claims under the U.S. and Michigan Constitutions, and its claim under the Dormant Commerce Clause.

### a.  The City has Violated Plaintiff's Free Speech Rights

The Ordinance violates Planet Aid's free speech rights guaranteed by the First Amendment to the United States Constitution and the Michigan Constitution.

The First Amendment provides that Congress cannot pass a law "abridging the freedom of speech" of citizens of the United States. U.S. CONST. amend. I. The Michigan Constitution contains an analogous provision. Const. 1963, Art. I, section 5. A long line of Supreme Court cases has repeatedly held that charitable donations qualify as a form of constitutionally protected speech. In *Schaumburg v. Citizens for a Better Environment,* the Supreme Court explained that "[c]haritable appeals for funds, on the street or door to door, involve a variety of speech interests — communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes — that are within the protection of the First Amendment." 444 U.S. 620, 633 (1980). With respect to whether a governmental entity may restrict these rights, the Court explained that a state entity "may serve its legitimate interests, but it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." *Id.* at 637. The Court made clear that a municipality's interests "can be better served by measures less intrusive than a direct prohibition on solicitation." *Id.*

8

In another case, the Supreme Court held that the government can regulate the collection activities of nonprofits so long as the regulations are reasonable, meaning the regulation "must be done, and the restriction applied, in such a manner as not to intrude upon the rights of free speech and free assembly." *Thomas v. Collins*, 323 U.S. 516, 540-41 (1945). Another relevant Supreme Court case further provides that where

> a statute imposes a direct restriction on protected First Amendment activity, and where the defect in the statute is that the means chosen to accomplish the State's objectives are too imprecise, so that in all its applications the statute creates an unnecessary risk of chilling free speech, the statute is properly subject to a facial attack.

*Sec'y of State of Maryland v. Munson Co., Inc.,* 467 U.S. 947, 967-68 (1983). In yet another case, the Court noted that a statute that attempts to restrict speech must be narrowly tailored to achieve an important government interest without unnecessarily infringing on First Amendment freedoms. *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 788 (1988).

A recent Fifth Circuit case is particularly instructive. In the case, the Fifth Circuit addressed the appropriate standard of scrutiny when addressing public receptacles used to solicit charitable donations. *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202 (5th Cir. 2011). Texas asserted that soliciting charitable donations was commercial speech and thus only required intermediate scrutiny, arguing the receptacles were no "more than a proposal of a commercial transaction: donate goods here." *Id.* at 212. The Court strongly disagreed, finding the speech interests in *Schaumburg* were clearly implicated. *Id.* at 212-13. The Court explained:

> A generous [citizen] who chooses to donate his goods is thus faced with a marketplace of charitable options; the public receptacles are not mere collection points for unwanted items, but are rather silent solicitors and advocates for particular charitable causes. Contrary to Texas's position, the public receptacles represent far more than an "upturned palm" or a mere "proposal of a commercial transaction [that says] donate goods here." Rather, the donation bins' "solicitation is characteristically intertwined with informative and perhaps persuasive speech

> seeking support for particular causes or for particular views on economic, political, or social issues." *Schaumburg*, 444 U.S. at 632.

*Id.* at 213. Consequently, the Fifth Circuit rejected the assertion that speech surrounding public donation receptacles was merely commercial speech. *Id.*

In the matter at bar, there is no question that Planet Aid's operation of donation bins in an effort to solicit and collect charitable donations qualifies as protected speech under the First Amendment. *See Schaumberg*, 444 U.S. at 633. Given that courts have found that regulations that interfere with public donation bins are subject to strict scrutiny, the Ordinance should be subject to strict scrutiny as well. *See Abbott*, 647 F.3d at 212-13. It is also clear the Ordinance fails strict scrutiny, as it certainly was not drawn narrowly to avoid unnecessary infringement on First Amendment freedoms. *Schaumburg*, 444 U.S. at 637; *Riley*, 487 U.S. at 788. On the contrary, the City took the exact opposite route—its Ordinance adopts an overly broad, prophylactic ban on all donation bins in order to avoid having to deal with purely hypothetical nuisances or other issues that may have arisen with certain donation bins in the future.

Even if the City argues it adopted the Ordinance to protect its residents by not allowing garbage to compile near the bins and thus preventing a potential nuisance, the Supreme Court has held the City can only regulate the collection activities of nonprofit entities in a way that does not intrude on their free speech rights. *Thomas*, 323 U.S. at 540-41. It goes without question that the Ordinance's outright ban on donation bins, which applies to for-profit *and* nonprofit entities such as Planet Aid, impermissibly intrudes on Planet Aid's free speech rights. Further, the City has numerous less restrictive ways in which it can protect its asserted interests without imposing a complete ban on all donation bins, such as issuing civil citations or nuisance complaints against donation bin operators as blight incidents or nuisances occur.

10

A recent decision from the District of Nebraska addressing the constitutionality of a donation bin ordinance is also instructive. In *Linc-Drop, Inc. v. City of Lincoln*, the district court granted Linc-Drop's motion for a preliminary injunction and prohibited the City from enforcing its donation bin ordinance. 2014 U.S. Dist. LEXIS 19566 (D. Neb. Feb. 18, 2014) (attached as ***Exhibit 9***. The ordinance at issue in *Linc-Drop* was actually less restrictive than St. Johns' Ordinance; it imposed restrictions on donation bins based on the percentage of proceeds from the bins that went to charitable purposes and barred for-profit entities from obtaining permits to operate bins. *Id.* at \*22-23, \*32-33. In contrast, St. Johns' Ordinance imposes a blanket prohibition on all donation bins, regardless of the amount of proceeds that go to charitable purposes and regardless of whether the bin is operated by a non-profit or for-profit organization. *See **Ex. 8***. The Court found the ordinance's percentage and license restrictions were not narrowly tailored to achieve Lincoln's interest in preventing fraud; rather, they were broad, prophylactic rules the Supreme Court has struck down repeatedly. *Linc-Drop*, 2014 U.S. Dist. LEXIS 19566, at \*32, 33. Accordingly, the Court found Linc-Drop was likely to succeed on the merits of its First Amendment claims and enjoined Lincoln from enforcing its ordinance. *Id.* at \*32, 36. Based on the *Linc-Drop* court finding Lincoln's ordinance to be overly broad and not narrowly tailored to achieve Lincoln's interests, and because St. Johns' Ordinance is far more restrictive than Lincoln's ordinance, injunctive relief is also proper in this situation.

In sum, there is simply no way the City can sincerely argue that its interest in preventing temporary and entirely hypothetical eyesores trumps the First Amendment free speech rights of charitable donation bin operators like Planet Aid. Even if it did, the prophylactic nature of the Ordinance certainly fails a strict scrutiny analysis. Thus, Plaintiff Planet Aid has demonstrated a likelihood of success on the merits of its free speech claims.

11

**b.  The City has Violated Plaintiff's Equal Protection Rights**

The Ordinance also violates the Equal Protection Clause of the United States and Michigan Constitutions.

The Equal Protection Clause of the U.S. Constitution provides that "no state…shall deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. The Equal Protection Clause of the Michigan Constitution is coextensive with that of the U.S. Constitution. Const. 1963, Art. I, sec. 2; *Crego v. Coleman*, 463 Mich. 248, 258; 615 N.W.2d 218 (2000). The Equal Protection Clause prohibits discrimination by the government that either: 1) burdens a fundamental right; 2) targets a suspect class; or 3) "intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty, Ohio,* 430 F.3d 783, 788 (6th Cir. 2005).

Here, the first type of equal protection claim is at issue. It is well established that the right to freedom of speech is a protected fundamental right. *See, e.g., Carey v. Brown*, 447 U.S. 455, 461-62 (1980). Several Michigan courts have held that "[a] zoning ordinance that totally excludes an otherwise legitimate use carries with it a strong taint of unlawful discrimination and a denial of equal protection of the law with regard to the excluded use." *English v. Augusta Twp.*, 204 Mich. App. 33, 37; 514 N.W.2d 172 (1994) (citing *Kropf v. Sterling Hts.,* 391 Mich. 139, 155-56; 215 N.W.2d 179 (1974)); *Countrywalk Condominiums, Inc. v. City of Orchard Lake Vill.*, 221 Mich. App. 19, 23; 561 N.W.2d 405 (1997). In cases where a zoning ordinance affects a fundamental right, such as the right to free speech, the ordinance is subject to strict scrutiny. *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.*, 172 F.3d 397, 410 (6th Cir. 1999). Under strict scrutiny, the government bears the burden of showing its regulation is "necessary to serve a compelling state interest" and "narrowly drawn to achieve that end." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382-83, 403 (1992).

12

In this situation, the Ordinance clearly violates the Equal Protection Clause because it burdens Planet Aid's fundamental right to free speech. *See infra*; *see also Carey*, 447 U.S. at 461-62. As explained above, it is clear the Ordinance cannot survive a strict scrutiny challenge. To begin with, the interests asserted by the City in justification of adopting the Ordinance are not "compelling" for purposes of a constitutional analysis. *R.A.V.*, 505 U.S. 382-83. The language of the Ordinance plainly states that its purpose is to protect the City from unattended donation bins that "*may* become an attractive nuisance for minors and/or criminal activity." *Ex. 8* § 1(b). The Ordinance also asserts a variety of generic, abstract concerns such as "preventing blight, protecting property values and neighborhood integrity [and] preserv[ing] the aesthetics and character of the community…." *Id*. These interests simply are not "compelling" so as to justify interference with Planet Aid's constitutional right to solicit charitable donations.

In contrast to the burden the Ordinance places on Planet Aid and other entities that solicit charitable donations through donation bins, the Ordinance allows organizations that solicit charitable donations at permanent structures, such as Goodwill, to freely continue doing so. This in effect allows organizations like Goodwill to have a monopoly over the charitable donations market in the City. The City Commission essentially acknowledged this monopoly at the December 9, 2013 meeting, noting the Planning Commission recommended a total prohibition on donation bins because entities such as "Goodwill are not interested in having these." *Ex. 6* at 7. The Ordinance also includes an arbitrary exemption for donation bins that were in existence on the date the Ordinance was enacted. *Ex. 8* § 1(d). This facially disparate treatment bears absolutely no rational relationship to any of the City's asserted interests, as any legitimate interest asserted by the City must apply equally to all donation bins, regardless of the date on which the donation bins came into use. Further, the exemption clause is illogical in light of the

13

City's stated goals of public safety, protecting property values, and avoiding nuisances. The mere fact that certain bins may have been in operation on the date the Ordinance was enacted certainly has no influence or impact, on its own, on whether the bins will become a nuisance in the future.

Even if the City's asserted interests were deemed compelling, the Ordinance is unquestionably not narrowly drawn in order to achieve the City's interests. *R.A.V.*, 505 U.S. at 403. Instead, the Ordinance issues a blanket prohibition on *all* entities from operating donation bins in the City. **Ex. 8** § 1(c) ("*No person, business or other entity* shall place, use or allow the installation of a donation box within the City of St. Johns.") (emphasis added). As outlined above, the City has many other, less restrictive options it can employ in order to achieve its stated interests instead of imposing an outright, premature ban on donation bins, such as issuing civil infractions or monetary penalties if a bin becomes a "nuisance." The City's prophylactic actions are particularly egregious given the fact that no City official has alleged that Planet Aid allowed its donation bins to become an alleged nuisance in the City. In fact, at the December 9, 2013 City Commission meeting, Mayor Beaman justified the Ordinance on the fact that "***other communities*** had people dropping off their trash" at donation bins. **Ex. 6** at 7 (emphasis added). Further, Supervisor Rademacher clarified that while there had "been a few instances" in which trash was dropped off at donation bins in the City, such incidents happened "very seldom." **Id**. Moreover, not a single City official claimed these "few instances" involved Planet Aid's bins.

In sum, the Ordinance fails strict scrutiny analysis, the applicable standard for Equal Protection claims, as the Ordinance is neither necessary to serve compelling state interests nor narrowly drawn in order to achieve the City's asserted interests. *R.A.V.*, 505 U.S. at 377, 382-383, 403. As a result, Planet Aid is likely to succeed on the merits of its Equal Protection claims.

### c. The City has Violated Planet Aid's Due Process Rights

14

The Ordinance also violates Planet Aid's rights to procedural due process and substantive due process guaranteed by the U.S. Constitution and the Michigan Constitution.

### i.  Procedural Due Process Violation

Under Sixth Circuit precedent, a plaintiff raising a procedural due process claim must show that (1) he had a life, liberty, or property interest protected by the Constitution; (2) he was deprived of that life, liberty, or property interest by a state actor; and (3) he was not afforded constitutionally adequate process under the law before he was deprived of that interest. *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009).

### 1.  Plaintiff has Valid Property and Liberty Interests

In determining whether there is a valid property or liberty interest, courts look to independent sources such as state law. *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002); *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). One such source is state law. *See Silver*, 966 F.2d at 1036. Under Michigan law, a prior nonconforming use constitutes a valid property interest. The Michigan Supreme Court defines a prior nonconforming use as "a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective date." *Belvidere Twp. v Heinze*, 615 N.W.2d 250, 253 (Mich. App. 2000). The SJZO defines "Nonconforming Use, Legal" as "[a] building, structure, or use lawfully existing at the time of enactment of this Code or amendment thereto which does not conform to the regulations of the district or zone in which it is situated." *Exhibit 10*, SJZO Art. 3-14.

Planet Aid operated two donation bins in the City until January 31, 2013, when the City forcibly removed and impounded the bins. *Ex. 2*, ¶ 12. The City then vehemently refused to allow Planet Aid to replace the bins, alleging repeatedly the bins were a nuisance. *Ex. 3, Ex. 5*.

15

Thus, the only reason Planet Aid did not have donation bins in existence on the precise date the Ordinance was enacted was because of the City's forcible removal of Planet Aid's bins – before the City had any regulation prohibiting donation bins – and subsequent refusal to allow Planet Aid to replace the bins. Thus, Planet Aid has a valid property interest because it has a valid nonconforming use in its donation bins.

Even if the Court finds Planet Aid does not have a valid property interest, Planet Aid still has a valid liberty interest. A plaintiff has a valid liberty interest in engaging in the legal business of their choice without being subject to arbitrary interference. *Sanderson v. Vill. of Greenhills*, 726 F.2d 284, 286 (6th Cir. 1984). In *Sanderson*, municipal officials asserted a power to bar a certain business (a billiard parlor) based solely upon "unmotivated and unreasonable opinions of that business," though no municipal ordinance prohibited such a business. *Id.* at 287. The Sixth Circuit determined the officials' actions were arbitrary and unconstitutional, and were motivated simply because they did not want that sort of business in their town. *Id.* at 286.

Similarly, Planet Aid has a liberty interest in operating donation bins, a lawful business activity, without being subject to arbitrary interference by the City. Like the officials in *Sanderson*, City officials asserted the power to entirely prohibit donation bins when they enacted the Ordinance. 726 F.2d at 286. The record also shows these officials enacted the Ordinance because of unreasonable opinions of donation bins, although no City ordinance at the time prohibited or even regulated bins. *Id.* at 287. The City confirmed its animus when it alleged that unnamed "for-profit companies" were placing donation bins in the City "without permission." *Ex. 5* at 7. This allegation was made despite the fact no City ordinance required donation bin operators to obtain permission before placing bins in the City, and despite Supervisor Rademacher clarifying the City had only experienced "a few instances" of trash drop-offs at

16

donation bins and such incidents happened "very seldom." *Id*. These few instances do not justify the City's arbitrary interference with Planet Aid's lawful business operations. The Ordinance's grandfather clause, which was crafted specifically to allow certain businesses like the Lions Club Recycling Center to continue operating further exemplify the City's arbitrary, intentional interference with Planet Aid's lawful business. *Id.*

In sum, Planet Aid has a property interest because it has a valid nonconforming use, as well as a liberty interest in engaging in the lawful business of its choice.

### 2. The City Deprived Planet Aid of its Property and Liberty Interests

There is no question the City has deprived Planet Aid of its property and liberty interests. The Ordinance, which went into effect on January 27, 2014, prohibits Planet Aid and all other donation bin operators from operating in the City. *Ex. 8*. In reality, Planet Aid has been prohibited from operating its donation bins in the City since January 31, 2013, the date on which City officials forcibly removed and confiscated Planet Aid's bins. *Ex. 2*. Consequently, as of January 31, 2013, the City has deprived Planet Aid of the ability to exercise its valid nonconforming use and of the ability to engage in the lawful business of its choice.

Thus it is clear the City has deprived Planet Aid of its property and liberty interests.

### 3. Planet Aid was not Afforded Adequate Process

Finally, Planet Aid was not provided adequate process before the City deprived it of its constitutionally protected interests. Process is considered constitutionally adequate if it involves prior notice and an opportunity for a pre-deprivation hearing. *Braun v. Ann Arbor Charter Twp.,* 519 F.3d 564, 572 (6th Cir. 2008); *Harris v. City of Akron,* 20 F.3d 1396, 1401 (6th Cir. 1994).

Here, while the City notified Planet Aid before it removed Planet Aid's bins, the City failed to provide Planet Aid with an opportunity for a pre-deprivation hearing. Community

17

Development Director Kudwa informed Planet Aid that its bins needed to be removed on January 14, 2013. *Ex. 2* ¶ 10. The letter provided Planet Aid with nine days to remove the bins. *Id.* Planet Aid's attorney then contacted City Attorney Salemi to inquire about the City's procedure through which Planet Aid could challenge the City Manager's determination. *Ex. 5*. Mr. Salemi responded and stated the City had no such procedure, and further asserted that "[y]ou don't standing to appeal even if there were." *Id.* This exchange shows the City refused to provide Planet Aid with an opportunity to be heard before it deprived Planet Aid of its protected interests, and in fact continued to steadfastly refuse to provide Planet Aid with such an opportunity even after the City deprived Planet Aid of these interests. Based on the City's refusal to provide Planet Aid with a pre-deprivation hearing, let alone *any* hearing whatsoever, it is clear the City failed to provide Planet Aid with adequate process.

In sum, the record makes clear that Planet is extremely likely to succeed on the merits of its procedural due process claim.

### ii. Substantive Due Process Violation

Substantive due process "serves the goal of preventing governmental power from being used for purposes of oppression, regardless of fairness of the procedures used." *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996). Under substantive due process, individuals have a constitutional "right not to be subject to arbitrary or capricious action by a state either by legislative or administrative action…." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 2005). The Sixth Circuit's standard to determine whether governmental action violates substantive due process is whether the action "shocks the conscience." *Id.* at 1222.

In evaluating a substantive due process claim, "a plaintiff must establish two elements: (1) that he has a constitutionally protected property or liberty interest; and (2) that defendants

18

arbitrarily and capriciously deprived him of that interest." *Crook v. Baker,* 584 F. Supp. 1531, 1562 (E.D. Mich. 1984). This Court recently held that where City officials effectively prohibited an individual who had a license to operate a peddler business - a protected property interest - from conducting his business, the City's actions amounted to arbitrary and capricious conduct. *Horn v. City of Mackinac Island*, 938 F. Supp. 2d 712, 720 (W.D. Mich. 2013).

Here, as explained thoroughly above, Planet Aid has both a protected property interest in its valid nonconforming use and a protected liberty interest in engaging in the lawful business of its choice. The City deprived Planet Aid of these interests through its arbitrary and capricious conduct. *Crook*, 584 F. Supp. at 1562. The City deprived Planet Aid of its protected interests by enacting the Ordinance, an arbitrary, prophylactic ordinance that prevents Planet Aid from conducting its business in the City. The arbitrariness of the City's actions are even more readily apparent in light of the Western District's recent decision in *Horn*, holding that preventing an individual with a protected property interest from conducting his business amounts to arbitrary and capricious conduct. *Horn*, 938 F. Supp. 2d at 720.

As the record indicates, the City Commission enacted the Ordinance simply because it did not want donation bins in the City. The Ordinance is based on purely hypothetical concerns; City officials did not even attempt to identify specific instances in which donation bins had caused problems in the City. Rather, the City relied on the fact that *other* cities had experienced problems, or the fact that donation bins could hypothetically create problems *in the future*. **Ex. 5** at 7. In essence, the City Commission enacted the Ordinance in order to prohibit a business that it arbitrarily and unjustifiably deems unacceptable for the City.

Since the record shows the City deprived Planet Aid of its protected property and liberty interests, Planet Aid will likely succeed on the merits of its substantive due process claim.

19

### d.   The City's Ordinance Violates the Dormant Commerce Clause

The Ordinance also violates the Dormant Commerce Clause because it places an unconstitutional burden on interstate commerce.

The Commerce Clause of the U.S. Constitution gives Congress the "Power…[t]o regulate Commerce…among the several States…." U.S. CONST. art. I, § 8, cl. 3. The Commerce Clause serves as an implicit restraint on state authority, even if there is no conflicting federal statute. *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007). The Dormant Commerce Clause, in contrast, is a wholly judicially created doctrine that prohibits states from discriminating against interstate commerce by favoring in-state commerce or activity. *S.C. State Highway Dept. v. Barnwell Bros.*, 303 U.S. 177, 184 (1938). In essence, the Dormant Commerce Clause stands for "the principle that state and local laws are unconstitutional if they place an undue burden on interstate commerce." *See* Erwin Chemerinsky, Constitutional Law: Principles & Policies § 5.3.1, at 419 (3d ed. 2006). The Dormant Commerce Clause doctrine allows states to regulate local issues so long as the regulation "does not materially restrict the free flow of commerce across state lines." *S. Pac. Co. v. State of Arizona ex rel. Sullivan*, 325 U.S. 761, 770 (1945). However, states are prohibited from "build[ing] up [their] domestic commerce by means of unequal and oppressive burdens upon the industry and business of other States." *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 272-73 (1984).

Where a regulation uses nondiscriminatory means to regulate interstate commerce, the standard to determine if the statute violates the Commerce Clause is "whether the burden the statute imposes on interstate commerce is clearly excessive in relation to the putative local benefits." *CSX*, 283 F.3d at 818 (internal citation omitted). When weighing the burdens and benefits, courts should consider "the nature of the local interest involved [and] whether it could

20

be promoted as well with a lesser impact on interstate activities." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Here, the Ordinance is unconstitutional because it places an undue burden on interstate commerce and favors in-state activity by prohibiting donation bins in the City. As Planet Aid has indicated, many of the donated items Planet Aid collects at its donation bins are eventually distributed or resold to organizations in other states as well as other countries. *Ex. 2* at ¶ 3. Thus, the Ordinance unconstitutionally regulates interstate commerce because it prevents Planet Aid from soliciting and accepting donated items in the City, many of which would have otherwise been distributed or resold to organizations in other state and countries. While Plaintiff does not question the City's ability to regulate local issues, the Ordinance at issue here is improper because it "materially restrict[s] the free flow of commerce across state lines." *S. Pac. Co.*, 325 U.S. at 770. The City's blanket prohibition on all donation bins effectively prevents any bin operator, including Planet Aid, from soliciting and obtaining charitable donations in the City that would otherwise be placed into interstate commerce to assist needy individuals around the country and world. At the same time, in-state entities that operate from permanent locations in the City, such as Goodwill, are permitted to continue soliciting and accepting donations and re-selling these donations at their locations without City interference. As a result, the Ordinance insulates and benefits local businesses by placing an unequal and oppressive burden on donation bin operators such as Planet Aid, which are based outside of Michigan and do not operate from permanent structure sin the City. *Bacchus Imports*, 468 U.S. at 272-73. The minutes of the December 9, 2013 City Commission meeting suggest the City was well aware of the Ordinance's preference toward in-state entities. City Attorney Salemi acknowledged discussing the Ordinance with local non-profits and they "are not interested in having these (donation bins)." *Ex. 6* at 7.

21

Mr. Salemi also said the grandfather clause was crafted to ensure certain organizations the City deems acceptable could continue operating without interference. *Id.* ("We did put in a grandfather clause because we weren't sure if the Lions Club Recycling Center qualified.").

The Ordinance employs a facially nondiscriminatory means of regulating commerce, as the Ordinance makes no explicit distinction between in-state and out-of-state activities. *CSX*, 283 F.3d at 818. As such, the applicable standard is "whether the burden the statute imposed on interstate commerce is 'clearly excessive in relation to the putative local benefits.'" *Id.* (internal citation omitted). In considering the purported local interests and whether they could be promoted just as well with less of an impact on interstate activities, *see Pike*, 397 U.S. at 142, it is plain the burden the Ordinance imposes is clearly excessive as compared to the City's asserted local benefits of protecting the health, safety and welfare of its residents. *See Ex. 8* § 1(b). The City has a number of other means of protecting these interests rather than completely prohibiting donation bins and thereby preventing Planet Aid and other bin operators from soliciting donations that would otherwise enter the stream of interstate commerce.

In sum, the Ordinance blatantly violates the Dormant Commerce Clause because it unduly burdens interstate commerce by prohibiting out-of-state entities from placing donation bins in the City but allowing in-state entities with permanent facilities to operate free from regulation. The Ordinance thereby impermissibly prevents out-of-state entities from soliciting donations that would otherwise enter the stream of interstate commerce. Thus, Planet Aid has shown a strong likelihood of success on the merits of its Dormant Commerce Clause claim.

IV.    **Plaintiff has no Adequate Remedy at Law and will Suffer Irreparable Harm if Injunctive Relief is Not Granted.**

Likewise, Plaintiff Planet Aid has no adequate remedy at law and will suffer irreparable harm if injunctive relief is not granted.

22

A plaintiff "seeking preliminary relief [must] demonstrate that irreparable injury is likely in the absence of an injunction. *Winter v. NRDC*, 555 U.S. 7, 22 (2008). The injury asserted must be "actual and imminent," rather than "speculative or unsubstantiated." *Abney v. Amgen, Inc.,* 443 F.3d 540, 552 (6th Cir. 2006). The Sixth Circuit has held that an injury is considered "irreparable" if it is not fully compensable through monetary damages. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). Additionally, the Supreme Court has held that "[a] loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373; *see also Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987).

Here, the irreparable harm that Planet Aid already faces and will continue to face indefinitely is readily apparent. As of January 27, 2014, the date on which the City adopted the Ordinance, Plaintiff's constitutional right to operate donation bins in order to collect charitable donations has been *completely* denied by the City. Since the Ordinance is already in effect and being enforced by the City, the injury Planet Aid is facing is unquestionably "actual and imminent." *Abney*, 443 F.3d at 552. The injury inflicted by the City is irreparable because it has inhibited Planet Aid's First Amendment right to solicit charitable donations. *See Elrod*, 427 U.S. at 373; *Planned Parenthood*, 822 F.2d at 1400. Planet Aid is also without an adequate remedy at law to resolve this injury. The Ordinance will indefinitely deprive Planet Aid and all donation bin operators of the ability to express their constitutional right to solicit charitable donations. This injury cannot be remedied through monetary damages. *See Overstreet*, 305 F.3d at 578.

Thus a temporary restraining order or preliminary injunction is proper, as Planet Aid will suffer irreparable harm for which there is no adequate remedy at law.

**V. The Balance of Hardships Weighs in Plaintiff's Favor and an Injunction Serves the Public Interest.**

23

The balance of hardships tips in favor of issuing the injunction Plaintiff has sought, as the injunction will serve the public interest by protecting multiple constitutional rights.

Federal courts have held "it is *always* in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (emphasis added); *see also Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995) ("[T]he public as a whole has a significant interest in ensuring equal protection of the laws and protection of First Amendment liberties.").

Here, if an injunction were to issue, the City will simply be forced to recognize Planet Aid's constitutional rights and the rights of all other organizations that operate donation bins to solicit charitable donations. This can hardly be deemed a hardship. In stark contrast, Planet Aid will face significant hardship if an injunction does not issue. As Planet Aid explained above, the operation of donation bins to solicit and collect charitable contributions is a constitutionally protected expression of Planet Aid's First Amendment rights. *Schaumburg*, 444 U.S. at 633. The Ordinance has already inhibited Planet Aid's constitutional rights by eliminating its ability to solicit donations and promote its charitable mission in the City. This impermissible interference with the constitutional rights of Plaintiff and all organizations that operate donation bins will continue indefinitely unless the City is forced to stop enforcing the Ordinance.

As Planet Aid outlined with respect to its equal protection claims, the interest in protecting constitutional rights outweighs the City's purported interests in preventing blight, protecting property values, and avoiding theoretical nuisances. *See Ex. 8* § 1(b). Moreover, the City has numerous less restrictive methods of achieving its stated goals, such as issuing civil citations, nuisance complaints, or monetary penalties to any bin operator that fails to properly maintain its bins, which the City apparently did not consider before implementing a blanket

24

prohibition on donation bins. Quite simply, there is no instance in which the City can sincerely argue its interest in preventing a hypothetical, temporary eyesore trumps constitutional rights.

Thus, the balance of hardships tips in favor of Planet Aid, and the issuance of the requested injunction would serve the public interest.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff Planet Aid requests the Court issue a Temporary Restraining Order, or in the alternative, a Preliminary Injunction, barring the City of St. Johns from enforcing the Ordinance pending final resolution of Plaintiff's Complaint.

Since the injuries the Ordinance has inflicted and continues to inflict upon Planet Aid and all donation bin operators are actual, imminent and ongoing, Plaintiff Planet Aid respectfully requests the Court immediately consider the instant Motion.

Dated: February 28, 2014                    Respectfully submitted,

**Dalton & Tomich, plc**

By:_ /s/ *Daniel P. Dalton*__
Daniel P. Dalton (P 44056)
Attorney for Plaintiff
719 Griswold Street, Suite 270
Detroit, Michigan 48226
313.859.6000
ddalton@daltontomich.com

### Certificate of Service

I hereby certify that on the 28th day of February, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and served a copy of the following on Defendant via U.S. mail:

- Plaintiff's Brief in Support
- Plaintiff's Index of Exhibits
- Plaintiff's Exhibits 1 – 10

/s/Daniel P. Dalton
Attorney for Plaintiff

25